IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALEXIS CARABALLO-RIVERA, ET AL.,
Plaintiffs,

v.

HON. ALEJANDRO GARCIA-PADILLA, ET AL.,
Defendants.

Civ. No. 14-1435 (DRD)

## OPINION AND ORDER

### I.  PROCEDURAL HISTORY

Plaintiffs Alexis Caraballo-Rivera, Hector M. Vazquez-Garcia, Doroteo Sanchez-Cruz, Daniel Valentin-Garcia, Carlos J. Pacheco-Estrada, Luis A. Perez-Bernard, and Roberto Velez-Garcia (collectively, "Plaintiffs") filed a *Complaint* (Docket No. 1) on May 29, 2014 against Hon. Alejandro Garcia-Padilla, Harold Gonzalez-Rosado, and Arturo Gonzalez (collectively, "Defendants"), all in their official and personal capacities, alleging political discrimination.  Plaintiffs brought this action under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments of the United States Constitution; Puerto Rico Law No. 131 of 1943, 1 L.P.R.A. §§ 13-19; Puerto Rico Law No. 100 of 1959, 29 L.P.R.A. § 146, *et seq.*; Puerto Rico Law 80 of 1976, 29 L.P.R.A. § 185a, *et seq.*; Articles 1802 and 1803 of the Civil Code, 31 L.P.R.A. §5141-5142; and Sections 1, 2, 4, 6, and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico.[1]

On September 30, 2015, the Court entered an *Opinion and Order* (Docket No. 28) addressing Defendants' *Motion to Dismiss*. The Court dismissed all federal and state law claims against former defendant, Governor Alejandro Garcia-Padilla, with prejudice and dismissed Plaintiffs Vazquez-Garcia, Velez-Garcia, and Perez-Bernard's First Amendment political discrimination claims with prejudice.

---

[1] Plaintiffs' claims arising under the laws of Puerto Rico are before the Court pursuant to 28 U.S.C § 1367.

Defendants filed a *Joint Motion for Summary Judgment* (Docket No. 61) on December 27, 2016. Defendants posit the Court should dismiss all claims pending against them on several grounds. First, Defendants argued the Plaintiffs failed to establish *prima facie* claims for political discrimination or for First Amendment retaliation. Defendants then averred Plaintiffs' dismissals were justified due to their unsatisfactory performance and legal pursuant to the *Mt. Healthy* doctrine. In the alternative, Defendants sought entitlement to the changeover and qualified immunity defenses. Finally, Defendants argued the Plaintiffs did not have a valid Fourteenth Amendment due process claim because all Plaintiffs were "trust employees under the applicable regulations.[2]

Plaintiffs duly opposed Defendants' motion on February 20, 2017. *See* Docket No. 69. Plaintiffs pointed to evidence on the record, which established the required elements of both Section 1983 claims and, in the alternative, argued there were genuine issues of material fact that precluded the entry of summary judgment. Additionally, Plaintiffs asseverated Defendants were not entitled to the changeover defense nor qualified immunity and that, despite their classification as "trust" employees, they were entitled to Fourteenth Amendment protections. For the reasons set forth below, the Court **DENIES** the motion.

## II.   RELEVANT FACTUAL FINDINGS[3]

### New Progressive Party ("NPP") Plaintiffs

i.      ***Plaintiff Doroteo Sanchez-Cruz ("Sanchez-Cruz")***

Plaintiff Sanchez-Cruz has been an employee at the Governor's Mansion ("La Fortaleza") since November 16, 2009, when he was hired as an Administrative Assistant II. ¶1. On November 1, 2010,

---

[2] On October 17, 2016, the Court entered a *Partial Judgment* (Docket No. 44) dismissing all of Plaintiff Caraballo-Rivera's claims pursuant to his *Notice of Voluntary Dismissal* (Docket No. 43).

[3] The Court notes Plaintiff qualified several otherwise uncontested facts based on the totality of the record. These facts are proven, as Plaintiffs did not contest them but merely qualified them based on additional facts on the record.

The Court notes Defendants' objections to several of Plaintiffs' objections. These objections were procedural, attacking Plaintiffs' use of one statement to refute several enumerated facts. The Court, however, does not find this to violate Rule 56.

Additionally, the Court finds Defendants' evidentiary objections to Plaintiffs' objections meritless as they object to a party's testimony on hearsay grounds. However, the parties may be cross-examined a trial and, accordingly, the testimony does not pose a hearsay problem and is admissible.

Plaintiff Sanchez-Cruz was named Maintenance and Conservation Supervisor. ¶4. On February 16, 2012, Plaintiff Sanchez-Cruz was named Technical Assistant. ¶6. La Fortaleza classifies all three of the aforementioned positions, including the Technical Assistant position, as a "trust" or "confidential" positions. *Id.* In all three positions, Plaintiff Sanchez-Cruz worked in the motor pool area of La Fortaleza. ¶2. The motor pool area includes the storage house, the parking, and the woodshop. *Id.*

Prior to his termination, Plaintiff Sanchez-Cruz was repairing a fan in La Fortaleza's Rattan Room, a room that is roughly four-hundred square feet. ¶¶ 8, 11. While Plaintiff Sanchez-Cruz worked, former Governor Alejandro Garcia-Padilla and Secretary of Public Affairs, Jorge Colberg-Toro, entered the room. ¶9. Governor Garcia-Padilla ordered Plaintiff Sanchez-Cruz and his maintenance crew to continue working while the two men spoke. ¶10; *see also* Docket No. 69, Exhibit 1, ¶5 (Plaintiff's Objections to DSMUF).

Plaintiff Sanchez-Cruz received his termination letter, signed by Defendant Harold Gonzalez-Rosado, on May 31, 2013. ¶¶ 12, 13, 14. Plaintiff Sanchez-Cruz's termination was effective immediately. *Id.* Plaintiff never discussed partisan politics with Defendant Harold Gonzalez-Rosado, nor did he tell Defendant Harold Gonzalez-Rosado that he was a member of the New Progressive Party ("NPP"). ¶¶ 15, 17.[4]

### ii. *Plaintiff Carlos Pacheco-Estrada ("Pacheco-Estrada")*

Plaintiff Pacheco-Estrada began working at La Fortaleza on December 16, 2011. ¶18. Plaintiff Pacheco-Estrada first worked as a driver, a trust position. *Id.* At the time of his termination, however, Plaintiff Pacheco-Estrada served as an electrician at La Fortaleza, where he dealt with electricity-related issues and assisted his maintenance coworkers with related issues. ¶¶ 19, 20, 21, 22, 23. Plaintiff Pacheco-Estrada's office was located at La Fortaleza's storage room, near the motor pool. ¶29.

---

[4] The Court is cognizant of Plaintiffs' objection to Defendant's facts regarding Defendants' knowledge of the Plaintiff's political inclinations. See Docket No. 69, Exhibit 1, ¶10. However, Plaintiffs' objections are based upon the notion that the record supports an inference that Defendants were aware of Plaintiffs' political affiliations. Nevertheless, Plaintiffs Sanchez-Cruz, Pacheco-Estrada, and Valentin-Garcia testified that they never directly discussed their affiliations with Defendants and, accordingly, the Court included the facts herein.

Plaintiff Pacheco-Estrada primarily worked inside the Governor's residence within La Fortaleza, but also worked outside La Fortaleza. ¶ 24, 30. During former Governor Luis Fortuño's term, Plaintiff Pacheco-Estrada entered the Governor's residence on over ten occasions, coinciding with former Governor Fortuño on three occasions. ¶¶ 25, 27. Plaintiff Pacheco-Estrada entered the Governor's residence approximately twice during Governor Garcia-Padilla's term. ¶31.

Plaintiff Pacheco-Estrada received his termination letter, signed by Defendant Harold Gonzalez-Rosado, on May 31, 2013. ¶31.   Plaintiff Pacheco-Estrada's termination was effective immediately. *Id.* Plaintiff Pacheco-Estrada never directly expressed he was an NPP supported to Defendants Arturo Gonzalez-Perez or Harold Gonzalez-Rosado, nor did either Defendant ask Plaintiff Pacheco-Estrada directly about his affiliations or express their own political inclinations to Plaintiff Pacheco-Estrada. ¶¶ 33, 34, 35, 36, 38, 39.

### iii.    *Plaintiff Daniel Valentin-Garcia ("Valentin-Garcia")*

Plaintiff Valentin-Garcia was hired on April 1, 2009 to serve as a Maintenance and Conservation worker at La Fortaleza. ¶40. La Fortaleza classified the position as one of "trust." *Id.* Plaintiff Valentin-Garcia worked in all of La Fortaleza's buildings, and sometimes saw former Governors Fortuño and Garcia-Padilla. ¶¶ 43, 44, 45.

Plaintiff Valentin-Garcia's relationship with Defendants Harold Gonzalez-Rosado and Arturo Gonzalez-Perez was work-related, not personal, and Plaintiff Valentin-Garcia never interacted with Defendants outside of work. ¶¶ 48, 49, 50, 54. Plaintiff Valentin-Garcia similarly did not have conversations with Defendants regarding his or their political affiliations and has no personal knowledge about whether Defendants know his political affiliation or about Defendant's own political affiliations. ¶¶ 56, 57, 59, 60, 61, 62, 63, 64, 65.

Plaintiff Valentin-Garcia was terminated on May 31, 2013. ¶41. Plaintiff Valentin-Garcia has no personal knowledge about whether his termination from La Fortaleza was politically motivated. ¶66.

## Popular Democratic Party ("PDP") Plaintiffs

### i. *Plaintiff Hector Vazquez-Garcia ("Vazquez-Garcia")*

On February 2, 20014, Plaintiff Vazquez-Garcia was hired in La Fortaleza to work as a Conservation worker. ¶67. La Fortaleza classifies said position as one of "trust." *Id.* Plaintiff Vazquez-Garcia testified that Defendant Arturo Gonzalez-Perez told him, in the presence of two other plaintiffs, that they were going to get rid of NPP-supporting employees. ¶73. Plaintiff Vazquez-Garcia told Defendant Arturo Gonzalez-Perez that he was not going to participate in the elimination of the NPP supporters in La Fortaleza. ¶74. On May 31, 2013, a human resources official handed Plaintiff Vazquez-Garcia a termination letter signed by Defendant Harold Gonzalez-Rosado. ¶70. Plaintiff Vazquez-Garcia's termination was effective immediately. ¶69. Plaintiff Vazquez-Garcia has no personal knowledge of whether he was replaced after termination. ¶72.

### ii. *Plaintiff Luis Perez-Bernard ("Perez-Bernard")*

Plaintiff Perez-Bernard had worked as a Skilled Worker at La Fortaleza since February 2, 2004. ¶75. La Fortaleza classifies said position as a "trust" position. *Id.* Plaintiff Perez-Bernard worked in all areas of La Fortaleza. ¶¶ 79, 80, 81. During the week, Plaintiff Perez-Bernard often worked in rooms that were occupied by La Fortaleza's staff, including Directors. ¶¶ 82, 83. During these instances, Plaintiff Perez-Bernard often could hear employees having work-related conversations. ¶84.

Plaintiff Perez-Bernard was present when Defendant Arturo Gonzalez-Perez instructed the PDP-affiliated Plaintiffs to refrain from assigning work to those affiliated with the NPP. ¶90. Plaintiff Perez-Bernard did not agree to freeze-out the NPP supporters and expressed that the maintenance workers were like a family. ¶91. Plaintiff Perez-Bernard received his termination latter, signed by Defendant Harold Gonzalez-Rosado, on May 31, 2013. ¶87. Plaintiff Perez-Bernard's termination was effective immediately. ¶85, 86.

### iii. *Plaintiff Roberto Velez-Garcia ("Velez-Garcia")*

Plaintiff Velez-Garcia became a Maintenance and Conservation Worker, a "trust" position, at La Fortaleza on August 6, 2001. ¶¶ 92, 93. Plaintiff Velez-Garcia worked all throughout La Fortaleza, including within the Governor's residence, and the surrounding grounds. ¶96. In total, Plaintiff Velez-Garcia entered the executive mansion approximately ten times in 2012. ¶97. The Governor at the time, Luis Fortuño, was present on approximately six occasions. ¶98.

Plaintiffs Velez-Garcia and Valentin-Garcia once spent five days constructing a closet to conceal wiring in La Fortaleza. ¶101. Plaintiff Velez-Garcia was also present on one occasion, along with Defendants Harold Gonzalez-Rosado and Arturo Gonzalez-Perez, while several maintenance workers repaired a leak on the roof of La Fortaleza. ¶102. Plaintiff Velez-Garcia was also present at the meeting where Defendant Arturo Gonzalez-Perez told all three PPD-affiliated parties that they were going to get rid of the NPP employees. ¶104.

### Defendants[5]

#### i.    *Defendant Harold Gonzalez-Rosado ("Gonzalez-Rosado")*

Defendant Gonzalez-Rosado began his term as Administrator of La Fortaleza on February 16, 2013. ¶105. As Administrator, Defendant Gonzalez-Rosado was in charge of personnel recruitment and decisions in La Fortaleza, as well as the administration and operation of La Fortaleza. ¶¶106, 109. Defendant Gonzalez-Rosado hired Defendant Arturo Gonzalez-Perez because he was recommended as someone familiar with the inner workings of La Fortaleza. ¶123.  The Administrator also ensures the premises are in order and aesthetically pleasing. ¶110.

The Field Operations Division is an umbrella, which encases the Maintenance and Conservation Division and the Workshop in the motor pool area, where all Plaintiffs worked at times relevant to this case. ¶¶ 111, 113. The Field Operations Division reports to the Administrator. ¶111. The Maintenance and

---

[5] In addition to the uncontested facts, the Court has included several disputed facts below. The details and extent of the disputes are not included, as it is unnecessary to do so at this stage. These factual disputes are material and directly affect the Court's ruling today.

Conservation Division keeps the premises clean and provides support for electrical, plumbing, mechanical, and security systems in La Fortaleza. ¶112. The Workshop, in turn, provides maintenance and conservation services to the physical structures of La Fortaleza. ¶114.

Upon his arrival to La Fortaleza, Defendant Gonzalez-Rosado noticed official vehicles full of waste and noticed workshop materials were missing. ¶136. Defendant Gonzalez-Rosado alleges the facilities around La Fortaleza were in disarray when he arrived. ¶115, 117, 118, 119, 120, 121, 122, 130. Defendant Gonzalez-Rosado testified to having seen exposed wiring, materials laying around, and unkempt facilities, among other problems. *Id. However*, Plaintiffs strongly refuted Defendant Gonzalez-Rosado's claims and provided sworn statements attesting to the orderly condition of the facilities. *See* Docket No. 69, Exhibit 1, ¶¶ 27, 29. Particularly, Defendant Gonzalez-Rosado took exception to a situation where he removed a paint can left in the Governor's mansion and found a forty-foot-deep hole that workers covered with a flowerpot two weeks later. ¶¶131, 132, 133, 134. Plaintiffs deny this ever happened. *See* Docket No. 69, Exhibit 1, ¶32.

Gonzalez-Rosado found the Workshop employees lacked commitment and were not performing at the level required in La Fortaleza. ¶¶ 137, 138, 139, 140, 145, 146, 147, 148, 149, 150, 151, 152. In the end, Defendant Gonzalez-Rosado decided to eliminate the workshop and undertake the tasks performed by the Workshop's employees himself. ¶¶ 141, 142, 143, 144. Plaintiffs strongly deny these facts and allege these are sweeping generalizations made by Defendant to shield himself from liability. *See* Docket No. 69, Exhibit 1, ¶35.

Defendant Gonzalez-Rosado has no personal knowledge of Plaintiffs Vazquez-Garcia, Sanchez-Cruz, Valentin-Garcia, Pacheco-Estrada, or Perez-Bernard's political affiliations. ¶¶ 155, 156, 157, 158, 159, 160, 161, and 162. Defendant Gonzalez-Rosado signed Plaintiffs' termination letters. ¶163.

ii.   ***Defendant Arturo Gonzalez-Perez ("Gonzalez-Perez")***

Defendant Gonzalez-Perez worked as a Technical Assistant at La Fortaleza since 15, 2013. ¶164. Defendant Gonzalez-Perez's tasks included evaluating the facilities in La Fortaleza and reporting on the deficiencies, if any. ¶165. Defendant Gonzalez-Perez claims he found La Fortaleza's facilities in bad shape, neglected, and with exposed wiring. ¶179, 180, 181. Plaintiffs refute this allegation. *See* Docket No. 69, Exhibit 1, ¶¶ 27, 39. Defendant Gonzalez-Perez prepared a "Report of the Conservation Workshop, April 2013." ¶177. The report contained suggestions on corrective action in La Fortaleza but did not include any specific findings as to any employees. ¶193; *see also* Docket No. 69, Exhibit 1, ¶41.

Plaintiffs were part of a group of workers referred to as "the guys from the Workshop." ¶¶ 182, 183. Defendant Gonzalez-Perez recommended a change in the Workshop's schedule allegedly in order to address shortcomings in the Workshops' availability for service. ¶¶183, 185, 186, 187, 188, 189, 190. Plaintiffs asseverate Defendants implemented the scheduling change as punishment for Plaintiffs Perez-Bernard, Vazquez-Garcia, and Velez-Garcia's refusal to discriminate against NPP-affiliated employees. *See* Docket No. 69, Exhibit 1, ¶40.

Defendant Gonzalez-Perez testified Plaintiffs were not producing as required. ¶198, 218, 219, 220, 221, 222, 223, 224. Defendant Gonzalez-Perez took pictures of the Workshop after Plaintiffs' termination and these pictures reflect Plaintiffs' unkempt work area. ¶199, 200, 205, 206, 207, 208. Plaintiffs deny these pictures reflect the condition of the Workshop as they left it, deny that Defendants informed them that their work was unsatisfactory, and deny that they failed to appear on a workday. *See* Docket No. 69, Exhibit 1, ¶¶ 44, 47, 48. Defendant Gonzalez-Perez also testified to several incidents regarding Plaintiffs' unsatisfactory work and insubordinate attitude. ¶¶ 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240. Plaintiffs deny these incidents occurred and reiterated that their work was always satisfactory and appropriate. *See* Docket No. 69, Exhibit 1, ¶48.

Defendant Gonzalez-Perez denies ever meeting with the PDP-affiliated Plaintiffs and instructing them to discriminate against the NPP-affiliated Plaintiffs. ¶248. Defendant Gonzalez-Perez does not know

Plaintiffs Pacheco-Estrada, Vazquez-Garcia, Sanchez-Cruz, and Valentin-Garcia's political affiliations. ¶246. After Plaintiffs' terminations, Defendant Gonzalez-Perez relocated the Workshop closer to La Fortaleza's main work areas and Defendant claims the new location has resulted in more cost-effective work and more efficient operations. ¶¶241, 242, 243, 244, 245.

### III.     STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986).  Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Veda-Rodriguez v. Puerto Rico*, 110 F.3d 174, 179 (1st Cir. 1997).  A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.*  Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes-Irizarry v. Corporacion Insular*, 11 F.3d 184, 187 (1st Cir. 1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor.  Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959-60 (1st Cir. 1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150 (2000)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106 S.Ct. 2505 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.*, 369 U.S. 470, 473, 82 S.Ct. 486 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman-Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781 (1982)("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir. 2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury"). "As we have said many times, summary judgment is not a substitute for the trial of disputed factual issues." *Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 178-179 (1st Cir. 2011)(internal quotations and citations omitted). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 85 F.3d 86, 95 (1st Cir. 1996). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010)(internal quotations and citation omitted). Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas De P.R. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)(internal citations omitted).

Further, the Court will not consider hearsay statements or allegations presented by parties that do not properly provide specific reference to the record. *See* D.P.R. Cɪᴠ. R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to the record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the

record not specifically referenced.");[6] *see also Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir. 2001)(finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").

## IV.    ANALYSIS

### A.  Section 1983 Generally

Section 1983 is the customary vehicle through which a plaintiff can seek relief for a state actor's political discrimination. *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012). For this purpose, Puerto Rico is the functional equivalent of a state. *Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011). Section 1983 "creates a private right of action for redressing abridgments or deprivations of federally assured rights." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005). As manifested by the Supreme Court, Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Moreover, in view that a Section 1983 claim does not contain a built in limitations period, a court addressing this type of claim must borrow "the appropriate state law governing limitations unless contrary to federal law." *Poy v. Boutselis*, 352 F.3d 479, 483 (1st Cir. 2003).

A claim pursuant to Section 1983 must satisfy two essential elements: "the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Grajales*, 682 F.3d at 46; *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). There are two aspects to the second inquiry: "(1) there must have been a deprivation of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been

---

[6] D.P.R. CIV. R. 56(b), often referred to as the anti-ferret rule, requires the party moving for summary judgment to submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact." Similarly, the non-moving party is required to submit a counter-statement "admit[ing], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph in the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by record citation." D.P.R. CIV. R. 56(c).

causally connected to the deprivation." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989). Plaintiffs' Section 1983 claims are grounded upon infringements of the First Amendment.

i.     ***Personal Involvement***

Defendant Gonzalez-Perez raises a threshold challenge to Plaintiffs' discrimination claims against him. Specifically, Defendant Gonzalez-Perez posits he had no hiring or firing authority at La Fortaleza and was not involved in the decision to terminate Plaintiffs. Defendants argue this fact alone is sufficient to dismiss all of Plaintiffs' claims against Gonzalez-Perez. The Court disagrees.

"Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" *Ocasio-Hernandez v. Fortuño-Burset,* 640 F.3d 1, 16 (1st Cir. 2011*)* (quoting *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 768 (1st Cir.2010)). Defendant Gonzalez-Perez argues he was not involved in the termination of Plaintiffs because Plaintiffs have not provided direct evidence that he signed their termination letters and or had authority to make personnel decisions at La Fortaleza. However, "one rarely finds 'smoking gun' evidence in a political discrimination case . . . [and] [c]ircumstantial evidence must, at times, suffice." *Id.* at 17.

Plaintiffs Vazquez-Garcia, Perez-Bernard, and Velez-Garcia testified about a meeting with Gonzalez-Perez where Gonzalez-Perez purportedly disclosed plans to get rid of all NPP supporters at La Fortaleza and urged the PDP Plaintiffs to withhold any work assignments for NPP-affiliates. Defendant Gonzalez-Perez allegedly spoke to the effects that the PDP was now in control and that the PDP Plaintiffs were to do as told by the leaders of the party. Defendant Gonzalez-Perez denies the meeting took place and denies making those comments. Nevertheless, at minimum, the competing accounts about this meeting raise a genuine issue of material fact as to Gonzalez-Perez's involvement in the discriminatory acts and, at most, Defendant Gonzalez-Perez's comments at the meeting amounts to "conduct 'setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to

12

inflict the constitutional injury.'" *Id.* at 16. Having found sufficient facts on the record whereupon a reasonable juror could find Defendant Gonzalez-Perez was personally involved in the alleged discriminatory acts, the Court **DENIES** Defendant Gonzalez-Perez's *Motion for Summary Judgment* for lack of personal involvement in Plaintiffs' firing.

### ii.    *First Amendment Political Discrimination*

Political discrimination is proscribed by the First Amendment of the United States Constitution. *Kusper v. Pontikes,* 414 U.S. 51, 56–57 (1973). As the First Circuit has remarked, the freedom to support a particular political party is "integral to the freedom of association and freedom of political expression that are protected by the First Amendment." *Cortes-Reyes v. Salas-Quintana*, 608 F.3d 41, 48 (1st Cir. 2010). Moreover, it is well established that these protections prohibit government officials from taking adverse employment action against non-policymaking public employees due to the employee's affiliation. *Welch v. Ciampa*, 542 F.3d 927, 938 (1st Cir. 2008).

In order to succeed on a claim of political discrimination, a plaintiff must establish that "(1) he and the defendants have 'opposing political affiliations,' (2) the defendants knew his affiliation, (3) he experienced an adverse employment action, and (4) his political affiliation was a 'substantial' or 'motivating' factor for the adverse action." *Santiago-Diaz v. Rivera-Rivera*, 793 F.3d 195, 199 (1st Cir. 2015) (*citing Ocasio–Hernández v. Fortuño–Burset*, 777 F.3d 1, 5 (1st Cir. 2015)); *see also Torres-Santiago v. Municipality of Adjuntas*, 693 F.3d 230, 236 (1st Cir. 2012); *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 239 (1st Cir. 2010). Plaintiffs bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that plaintiffs' constitutionally protected conduct was a substantial or motivating factor behind their dismissal. *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir. 1993). Once the plaintiffs' prima facie burden is met, "the defendant may then rebut that showing with what is commonly referred to as the *Mt. Healthy* defense: by proving by a preponderance of the evidence that the governmental agency would have taken the same action against the employee even in the absence of the

protected conduct." *Reyes-Perez v. State Ins. Fund Corp.*, 755 F.3d 49, 54 (1st Cir. 2014); *see also Angulo-Alvarez v. Aponte de la Torre*, 170 F.3d 246, 249 (1st Cir. 1999). The NPP and PDP are opposing political parties in Puerto Rico, *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 511 (1st Cir. 2009), and the parties do not dispute that an adverse employment action was taken against Plaintiffs. Accordingly, the Court discusses the remaining elements in turn.

**Knowledge**

Defendants claim that Plaintiffs have not provided evidence that Defendants knew Plaintiffs' political affiliation at the time of Plaintiffs' termination. Defendants point to the testimony of Plaintiffs Sanchez-Cruz, Pacheco-Estrada, and Valentin-Garcia that they never discussed their political affiliations directly with either Defendant. Defendants ignored the well-established norm that "circumstantial evidence can suffice to show a defendant's knowledge of a plaintiff's political party." *Ocasio-Hernandez*, 777 F.3d at 7; see also *Martinez–Vélez v. Rey–Hernández,* 506 F.3d 32, 44 (1st Cir. 2007) (noting that a jury could reasonably infer that the defendant was aware of the plaintiff's NPP affiliation based on testimony that the plaintiff "spoke openly about her political views and sat in the NPP portion of the de facto segregated cafeteria").

Genuine issues of material fact as to defendants' awareness of plaintiffs' political affiliation preclude summary judgment of Plaintiffs' First Amendment political discrimination claims. *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81 (1st Cir. 2014). Viewing the facts in the light most favorable to the Plaintiffs, and drawing all reasonable inferences in their favor, we conclude that there is a genuine issue of material fact as to whether Defendants were aware of Plaintiffs' political affiliations at the time of their firing. Specifically, testimony regarding the meeting between Defendant Gonzalez-Perez and the PDP-affiliated Plaintiffs, where Defendant Gonzalez-Perez purportedly expressed discriminatory animus towards the NPP-affiliated workshop workers, precludes entry of summary judgment on the issue of knowledge. The PDP-affiliated Plaintiffs testified about the meeting and, not long after, Defendant Gonzalez-Rosado signed

all Plaintiffs' termination letters. The temporal proximity between the alleged comments and Plaintiffs' firing provides grounds for a reasonable juror to find Defendants knew Plaintiffs' affiliation with the NPP prior to their termination. In any event, definitively answering this question calls for "credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts, all tasks for the jury, not the judge." *Garcia-Gonzalez*, 761 F.3d at 99.

**Political Affiliation as a Substantial or Motivating Factor**

Finding a genuine issue of fact as to Defendants' knowledge of Plaintiffs' political affiliation debilitates Defendants' challenge to the NPP Plaintiffs' claim that their political affiliation was a substantial or motivating factor in Plaintiffs' termination. The Court, however, will briefly address this element and the law governing the issue.

Generally, "unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment." *Garcia-Gonzalez* at 101. However, often probative of discriminatory intent is "a politically charged employment atmosphere occasioned by [a] major political shift ... coupled with the fact that plaintiffs and defendants are of competing political persuasions." *Torres-Santiago*, 682 F.3d at 240-41 (citing *Ocasio–Hernández,* 640 F.3d at 17–18 (quoting *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 69 (1st Cir.1993)); *see also Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 50 (1st Cir. 2012). La Fortaleza is undoutebdly a politically charged atmosphere, as it is the highest office in Puerto Rico, where its Governor resides and works. Moreover, these firings came in May 2013, five months after the PDP came to power and "temporal proximity between a change of administration and an adverse employment action is relevant to whether political affiliation was a substantial or motivating factor in that adverse employment decision." Garcia-Gonzalez, 716 F.3d at 101 (quoting *Torres–Santiago,* 693 F.3d at 240 and citing *also Grajales,* 682 F.3d at 50).

Once again, reaching a definitive determination on this prong requires impermissible credibility determinations and factual conclusions. The PDP Plaintiffs' testimony regarding the meeting with

Defendant Gonzalez-Perez coupled with the subsequent firing of both PDP and NPP Plaintiffs raises an issue of fact regarding Defendants' intent in terminating Plaintiffs. *See, e.g., Anthony v. Sundlun,* 952 F.2d 603, 606 (1st Cir.1991) ("Given the nature of the [employees'] positions, the defendants' knowledge that the plaintiffs had originally been hired by the previous [ ] administration, the timing of the moves, the identities of those consulted, the lack of any legitimate reason for ousting the incumbents, and the partisan connections of the replacement workers, it seems disingenuous to suggest that [the defendant] acted without regard to the politics of the situation.").

**Conclusion**

The Court finds the NPP Plaintiffs have provided competent evidence to create a genuine issue of fact regarding the contested prongs of their First Amendment discrimination claims under Section 1983. The Court **DENIES** Defendants' *Joint Motion for Summary Judgment* seeking dismissal of these claims.

### iii.      *First Amendment Retaliation*

Defendants posit the PDP-affiliated Plaintiffs, Vazquez-Garcia, Perez-Bernard, and Velez-Garcia, have not provided evidence to support the elements of a *prima facie* claim of First Amendment Retaliation. Generally, First Amendment retaliation claims have three analytical prongs: "1) whether [Plaintiff] was speaking on matters of public concern; 2) whether [his] and the public's interest in free discourse on those matters outweighed the countervailing governmental interest in promoting efficient performance of public service; and 3) whether [his] protected expression was a motivating or substantial factor in the mayor's decision not to renew her contract." *Padilla-Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 78 (1st Cir. 2000)(citing *Tang v. Rhode Island Dep't of Elderly Affairs,* 163 F.3d 7, 12 (1st Cir.1998); *Pickering v. Board of Educ.,* 391 U.S. 563, 568 (1968); and *O'Connor v. Steeves,* 994 F.2d 905, 912 (1st Cir.1993)). Defendants may then rebut Plaintiffs' showing through the Mt. Healthy defense. *Id.* (citing *O'Connor,* 994 F.2d at 912). The Court need not discuss the third element of the analysis as the Court found a genuine

issue of fact regarding whether political animus substantially motivated Defendants' termination of Plaintiffs. The Court will discuss the first two prongs *seriatim*.

**Matter of Public Concern**

For speech to be afforded constitutional protection, "a public employee must establish that she was speaking 'as a citizen on a matter of public concern.'" *Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 66–67 (1st Cir. 2015)(citing *Díaz–Bigio v. Santini*, 652 F.3d 45, 51 (1st Cir.2011) and *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). The PDP Plaintiffs in the instant case spoke out against political discrimination in the workplace, speech that courts have afforded First Amendment protection in the past. *See Curran v. Cousins*, 509 F.3d 36, 46 (1st Cir. 2007)("The topic of a public official basing personnel actions, as to non-policymaking employees, on political affiliation rather than merit is a topic of public concern."). Therefore, Plaintiffs' claims survive if the balance of interests favors First Amendment protection.

**Balancing of Interests**

"A government employee's First Amendment rights depend on a 'balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Maymi v. Puerto Rico Ports Auth.*, 515 F.3d 20, 26 (1st Cir. 2008)(citing *Pickering*, 391 U.S. at 568); *see also Decotiis v. Whittemore*, 635 F.3d 22, 35 (1st Cir. 2011). Generally, the Court may consider: "(1) the time, place, and manner of the employee's speech and (2) the employer's motivation in making the adverse employment decision." *Davignon v. Hodgson*, 524 F.3d 91, 103–04 (1st Cir. 2008)(internal citations omitted). Among those state interests that may be impaired by an employee's comments are "discipline, promoting harmony among co-workers, interference with duties, and the interest in preserving a close working relationship for which personal loyalty and confidence is necessary." *Maymi* at 26 (citing *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).

The PDP Plaintiffs spoke out against discrimination in the workplace and in defense of their coworkers. The PDP Plaintiffs refused to assign work based on political affiliations in positions where tasks were mainly maintenance-related, and not related to policymaking or confidential governmental affairs. Plaintiffs did not make these statements in a disruptive manner; they made the statements in a private meeting with only five participants, all of whom are parties today. In sanctioning the PDP Plaintiffs' refusal to comport to Defendants' discriminatory practices, Defendants were acting in their own interest and not in furtherance of any overriding governmental interests. Accordingly, based on the record, the Court finds the balance of interests favors First Amendment protection of Plaintiffs' speech. *See Mihos v. Swift*, 358 F.3d 91, 103 (1st Cir. 2004)(Noting the government's interests are undermined when the employer retaliates out of self-interest and not concern about the functioning of the governmental entity).

## Conclusion

The Court finds the PDP Plaintiffs have provided sufficient evidence to raise a genuine issue of fact regarding each prong of their First Amendment Retaliation claim under Section 1983. The Court **DENIES** Defendants' *Joint Motion for Summary Judgment* seeking dismissal of these claims.

### B. *Mt. Healthy*

Section 1983 liability does not trigger "where an adverse employment action, even though resting in part on political motives, would have been taken anyway for permissible reasons (*e.g.,*misconduct or incompetence)." *Martinez-Velez v. Rey-Hernandez*, 506 F.3d 32, 39 (1st Cir. 2007)(citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–87 (1977)). Once a plaintiff provides evidence to support a prima facie Section 1983 claim, Defendants may show that "(i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional.'" *Reyes-Orta v. Puerto Rico Highway & Transp. Auth.*, 811 F.3d 67, 73 (1st Cir. 2016) (quoting *Velez–Rivera v. Agosto–Alicea*, 437 F.3d 145, 152 (1st Cir. 2006). The burden then shifts one last time to Plaintiffs who may "'discredit the ... nondiscriminatory reason, either circumstantially or directly, by

adducing evidence that discrimination was more likely than not a motivating factor.'" *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 302 (1st Cir. 2014) (quoting *Padilla–Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 77 (1st Cir. 2000)).

Defendants spilled considerable ink justifying their firings of Plaintiffs based on their inefficient performance, their lackadaisical work attitude, and their failure to maintain their work areas and the areas under their care in adequate condition. However, all work evaluations made by Defendants lack individualized findings as to each Plaintiff and his work performance that would shed considerable light on the merits of their termination. Most importantly, all Plaintiffs' provided sworn statements that their work was satisfactory, that their work areas were in order, and that La Fortaleza was in top condition under their care. Because these statements were provided based on their personal knowledge, they are adequate to defeat Defendants' claims of justified terminations based on poor performance. *See Garcia-Gonzalez*, 761 F.3d at 97 ("Both affidavits and deposition testimony are effective in opposing summary judgment only when they are given on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or deponent (as the case may be) is competent to testify about the matter in question."). In the alternative, the Court would have to make impermissible credibility determinations based on conflicting testimony. The Court need not go further. The Court **DENIES** Defendants' *Joint Motion for Summary Judgment* based on the *Mt Healthy* doctrine.

### C. Changeover Defense

Defendants have also invoked the changeover defense in response to Plaintiffs' claims. This defense "relies on the prerogative of newly elected officials to make politically neutral changes to improve departmental operations after a careful study of existing personnel and business practices." *Montfort-Rodriguez v. Rey-Hernandez*, 504 F.3d 221, 225 (1st Cir. 2007); *see also Agosto-de-Feliciano v. Aponte-Roque*, 889 F.2d 1209, 1220–22 (1st Cir. 1989). However, for the reasons discussed above in relation to the *Mt. Healthy* doctrine, the presence of competing accounts on the condition of La Fortaleza at the time

Defendants rose to power precludes a finding of a legitimate invocation of the changeover defense. Although Defendant Gonzalez-Perez wrote a report regarding the poor conditions of La Fortaleza, his report is inconsistent with Plaintiffs' accounts of their work. The report also lacks an itemized assessment of the poorly performed tasks, who performed them, and whether that person is generally ineffective in his work. Due to this factual discrepancy, the Court must **DENY** Defendants' *Joint Motion for Summary Judgment* under this defense. *But see Vélez-Rivera v. Agosto-Alicea,* 437 F.3d 145, 149 (1st Cir.2006) (affirming summary judgment for defendants where an independent contractor conducted an audit to assess the legality of all personnel transactions during a particular period).

### D. Fourteenth Amendment Due Process

To establish a procedural due process claim under Section 1983, "a plaintiff must alleged that she was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." *Maymi*, 515 F.3d at 29–30; *see also Marrero–Gutiérrez v. Molina,* 491 F.3d 1, 8 (1st Cir.2007). State law governs whether Plaintiffs have a protected property interest in their jobs. *Costa-Urena v. Segarra*, 590 F.3d 18, 27 (1st Cir. 2009); *see also Rosario–Torres v. Hernandez–Colon,* 889 F.2d 314, 319 (1st Cir.1989) (en banc) ("The sufficiency of a claim of entitlement to a property interest in public employment must be measured by, and decided with reference to, local law.") (citing *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)); *and Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 53 (1st Cir.1990) ("Constitutionally protected property interests originate in extra-constitutional sources"). Defendants posit that Plaintiffs' classification as "trust" employees forecloses their claim as the First Circuit has "previously held that trust employees who are of "free selection and removal" have no constitutionally protected interest in that position." *Maymi* at 30.

Plaintiffs' are classified as trust employees pursuant to the Puerto Rico Personnel Act and the Regulations of La Fortaleza. *See* 3 P.R. Laws Ann. §1461e and Docket No. 61, Exhibits EE and FF. Plaintiffs' classifications are based upon the notion that some public employees "occupy positions of such

unusually intimate propinquity relative to government leaders that, despite their noninvolvement with partisanship and policymaking, political loyalty could be deemed an appropriate requirement of the job for purposes of muzzling the *Elrod–Branti* watchdog." *Vazquez Rios v. Hernandez Colon,* 819 F.2d 319, 324 (1st Cir.1987); *see also Santiago Correa v. Hernandez Colon,* 835 F.2d 395, 397 (1st Cir.1987). However, "courts should construe the [confidentiality] exception narrowly and guard against efforts to invoke it in support of across-the-board patronage dismissals." *Vazquez-Rios* at 324 (internal citations omitted).

The First Circuit addressed the same situation now before the Court in *Santiago-Correa v. Hernandez-Colon*, 835 F.2d 395 (1st Cir. 1987). The case was brought by several employees of La Fortaleza, classified as "trust" pursuant to the regulations before the Court today, under Section 1983 for due process violations. Discussing prior precedent, the First Circuit recognized that "political loyalty could be deemed an appropriate requirement of the job" in situations where the public employees occupied positions of "unusually intimate propinquity relative to government leaders...." *Id.* (quoting *Vazquez-Rios* at 324). The Circuit Court noted the distinction between employees whose functions "*intrinsically* place them in a confidential position relative either to policymakers or the policy making process, and those whose jobs merely permit an *incidental* exposure to sensitive material that is in fact beyond the bounds of their employment." *Id.* (emphasis theirs).

In applying the discussed precedent, the First Circuit disregarded La Fortaleza's Regulation classifying the plaintiffs as "trust" employees and based the decision on the actual tasks each party performed. The court found custodial employees whose functions placed them in much more narrow contact with policy leaders than that enjoyed by Plaintiffs were entitled to the due process afforded to career employees. *Santiago-Correa* at 397-98. This sort of on-point precedent relieves the Court of its duty to take this issue further. The Court holds the facts on the record regarding Plaintiffs' functions at La Fortaleza suggest these workshop employees were of the sort that had incidental exposure to confidential material and not those who were intrinsically placed in areas with access to confidential materials. Plaintiffs

were electricians, painters, maintenance workers, and generally responsible for the upkeep of La Fortaleza. Although they testified that they performed tasks inside La Fortaleza, these work tasks placed them at risk of incidental contact with confidential information or conversations. These are the duties that the *Santiago-Correa* court found warranted Fourteenth Amendment protection. Based on these well-reasoned findings of the First Circuit Court of Appeals, the Court therefore **DENIES** Defendants' *Joint Motion for Summary Judgment* seeking dismissal of Plaintiffs' Fourteenth Amendment claims.

### E.  Qualified Immunity

Finally, Defendants assert they are entitled to qualified immunity for their actions. The qualified immunity doctrine is known to protect public officials from "the specter of damages liability for judgment calls made in a legally uncertain environment." *Ryder v. United States*, 515 U.S. 177, 185 (1995). The doctrine "provides defendant public officials immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). Under this doctrine, entitlement to immunity is warranted if there is no violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A two-part test shapes the qualified immunity inquiry. A court should deny a defendant qualified immunity if: (1) the facts a plaintiff has either alleged or shown establish a violation of a constitutional right; and (2) the constitutional right at issue was *clearly established* at the time of the defendant's alleged violation. *Cortes-Reyes v. Salas-Quintana*, 608 F.3d 41, 51 (1st Cir. 2010). Law is *considered clearly established* "either if courts have previously ruled that materially similar conduct was unconstitutional, or if 'a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct' at issue." *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 527 (1st Cir. 2009); *see also Jennings v. Jones*, 499 F.3d 2, 16 (1st Cir.2007). Furthermore, it has been interpreted that a right is clearly established if the contours of the right are sufficiently clear such that "a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). That is, "a right is clearly established if, at the time the defendant acted, he was on clear notice that what he was doing was unconstitutional." *Costa-Urena*, 590 F.3d at 29. As to clearly established law concerning First Amendment claims, the First Circuit has indicated that "the clearly established law both in this circuit and beyond precludes government officials from discharging civil or 'career' employees for politically-motivated reasons." *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 564 (1st Cir. 2003).

Regarding this two-part analysis, it has been observed that both questions are matters of law for the court to decide. However, the First Circuit has expressed that the "reasonableness of the violation," although also a question of law, must be determined by the jury when there are factual questions antecedent to this determination. *Rodriguez-Marin v. Rivera-Gonzalez*, 438 F.3d 72, 83-84 (1st Cir. 2006). That is, "while preliminary factual questions regarding qualified immunity are sent to the jury, the legal question of the availability of qualified immunity is 'ultimately committed to the court's judgment.'" *Id.*

Having discussed the applicable two-pronged analysis for a qualified immunity defense, the Court now refrains from applying the test to the facts of the case because there are unresolved issues of fact at this time that preclude the need for such an analysis. Concerning the qualified immunity defense, the First Circuit has observed the following:

> pretrial resolution sometimes will be impossible because of a dispute as to material facts. In such a case, the factual issues must be decided by the trier of fact, thereby precluding summary judgment. Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella.

*Kelley v. Laforce*, 288 F.3d 1, 7 (1st Cir.2002) (citations omitted); *see also Rodriguez-Marin*, 438 F.3d 83-84 (1st Cir. 2006).

As previously proclaimed, issues of fact remain as to Defendants' motivations, if any, at the time of the alleged violation to Plaintiffs' First Amendment rights. Therefore, it cannot be determined whether the qualified immunity defense is available to Defendants at this time. The qualified immunity defense cannot

be adjudicated until this factual dispute is resolved by the appropriate trier of fact—the jury. It is often remarked that the Court must always proceed with caution in the qualified immunity context, as the Court now does, because the fact-specific nature of the defense leaves "ample room for mistaken judgments." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). The aforementioned facts in controversy are enough to keep this Court from taking a headlong leap into the qualified immunity inquiry at this point in time. *See Santa Carrasquillo v. Rey Hernandez*, No. CIV. 01-1428 (DRD), 2005 WL 2206449, at *7-8 (D.P.R. Sept. 9, 2005); *Velez-Herrero v. Guzman*, 330 F. Supp. 2d 62, 72 (D.P.R. 2004)(both refusing to apply the qualified immunity doctrine at the summary judgment stage due to unresolved issues of fact as to defendants motivations for the alleged misconduct).

The Court acknowledges Plaintiffs were classified as trust employees and Defendants may have based their termination on that notion. However, neither Defendant testified that they were aware these employees were classified as trust employees, nor did either Defendant testify regarding the existence of the regulations promulgated by La Fortaleza, which categorize Plaintiffs as trust employees. Because the Court must supply all missing facts in the light most favorable to Plaintiffs, the Court may not assume Defendants were aware of, and acted pursuant to, the Regulations when they terminated Plaintiffs.

The Court now takes a moment to acknowledge the Hon. Juan Torruella's concurrence and partial dissent in *Lopez-Quinones v. Puerto Rico Nat. Guard*, 526 F.3d 23, 29–30 (1st Cir. 2008)(Torruella, J., concurring in part, dissenting in part). Former Circuit Chief Judge Torruella addressed the issue of qualified immunity in a context similar to the facts of the instant case. Specifically, the notion that high-level policymakers rely on job classifications, as opposed to actual duties, when making firing decisions. Judge Torruella remarked that the defendant in *Lopez-Quinones* "recklessly ignored established law of this circuit" in firing the plaintiff and "such behavior should lead to the dispossession of the mantle of qualified immunity, rather than the extension of this privilege to them." *Id.* The Court echoes Judge Torruella's sentiment today.

It is an all-too-familiar occurrence for Puerto Rico's officials to act off political motives and then run for cover under the umbrella of qualified immunity. The Court does not find this type of behavior reasonable, particularly as more years go by and the Section 1983 rain down upon the courts every four years. Numerous cases have held that job duties, not mere titles, should govern personnel decisions in Puerto Rico's government. Notwithstanding, officials continue to ignore the law and lean on manufactured titles and classifications to justify their decisions. This behavior is unreasonable and destructive to the inner-workings of Puerto Rico's government.

Nevertheless, the Court need not reach a definitive conclusion on this issue as factual vacuums prevent the Court from reaching a conclusion on whether Defendants are entitled to qualified immunity. Defendants' *Joint Motion for Summary Judgment* under the qualified immunity doctrine is **DENIED.**

### F.  State Law Claims

Defendants urge the Court to dismiss Plaintiff's state law claims under Law 100 and Articles 1802 and 1803. Defendants allege there is no individual cause of action against government employees under law 100 and that Law 100 supersedes Article 1802 as a more specified labor law addressing the issues raised by Plaintiffs. The Court agrees in part with Defendants. Defendants' Joint Motion for Summary Judgment is **GRANTED** and Plaintiffs' claims under Article 1802. *See Santini-Rivera v. Ser. Air. Inc.*, 137 D.P.R. 1, 1994 P.R.-Eng. 909.527 (1994)("As a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under [article 1802]."). Defendants' Joint Motion for Summary Judgment is also **GRANTED** as to Plaintiffs' Article 1803 claims as no supervisory defendants remain on the record and both Defendants are alleged to have participated directly in the acts leading up to Plaintiffs' discharges. Accordingly, no vicarious liability issues are before the Court today. However, Defendants' Joint Motion for Summary Judgment as to Plaintiffs' Law 100 claim is **DENIED** as the First

Circuit has recognized individual liability for state actors under Law 100. *See Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 240 (1st Cir. 2010).

## V.    CONCLUSION

The Court recognizes the evidence provided by Plaintiffs is somewhat meager. Specifically, the denial of this motion is mostly based on the alleged meeting between the PDP-affiliated Plaintiffs and Defendant Gonzalez-Perez as well as Plaintiffs' sworn statements regarding their adequate performance of their duties. However, these "individually weak pieces of evidence . . . are nonetheless, in the aggregate, sufficient to defeat summary judgment. *Garcia-Gonzalez* 761 F.3d at 101 (citing *González–De–Blasini v. Family Dep't,* 377 F.3d 81, 86 (1st Cir.2004)). Defendants Harold Gonzales-Rosado and Arturo Gonzalez-Perez's Joint Motion for Summary Judgment (Docket No. 61) is **DENIED in part and GRANTED in part** as enumerated above. Moreover, the instant case is now **STAYED** pursuant to Title III of PROMESA. Plaintiffs may request relief of the stay in case 17-bk-1578 (LTS).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of October, 2017.

*S/ DANIEL R. DOMÍNGUEZ*
DANIEL R. DOMÍNGUEZ
U.S. District Judge